Richard L. Steer
Tara Toevs Carolan
**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendants*
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000 – Telephone
(212) 216-8001 – Facsimile
rsteer@tarterkrinsky.com
tcarolan@tarterkrinsky.com

ORAL ARGUMENT REQUESTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
EDER DAVID BENITEZ a/k/a DAVID BENITEZ and
GERSON VENITES, on behalf of themselves and all     :
others similarly-situated,
                                                     :   Case No. 14-cv-7074 (CM)
            *Plaintiffs,*
                                                     :
        -against-
                                                     :
DEMCO OF RIVERDALE, LLC d/b/a PLANET
WINGS, and DEMCO OF OSSINING, LLC d/b/a              :
PLANET WINGS, and DEMCO OF WAPPINGERS
FALLS, LLC d/b/a PLANET WINGS, and PLANET            :
WINGS ENTERPRISES, INC., and PLANET WINGS
INC., and PLANET WINGS MANAGEMENT, INC.,             :
and DEMETRIO PETRIZZO, and FRANCO
FIDANZA, and PAULA FIDANZA, each in their            :
individual and professional capacities,
                                                     :
            *Defendants.*
------------------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED
<u>NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA</u>**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .............................................................................................................1

    Wages and Benefits..............................................................................................................2

    Primary Duties ....................................................................................................................3

    The U.S. DOL Audit ...........................................................................................................9

    Manager Certifications........................................................................................................9

ARGUMENT .................................................................................................................................10

    I.   Conditional Certification Should Be Denied .....................................................10

        A.   Absence of a factual nexus between Plaintiffs and
             purported collective bars certification .....................................................10

CONCLUSION..............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Diaz v. Elecs. Boutique of Am. Inc.,
  No. 04 Civ. 0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ........................................12

Flores v. Osaka Health SPA, Inc.,
  No. 05 Civ 962, 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ...............................................11

Hoffman v. Sbarro, Inc.,
  982 F. Supp. 249 (S.D.N.Y. 1997)..........................................................................................11

Hoffman-La Roche Inc. v. Sperling,
  493 U.S. 165, 110 S. Ct. 482 (1989).......................................................................................11

Hunter v. Sprint Corp.,
  346 F. Supp. 2d 113 (D.D.C. 2004)

Inglesias-Mendoza v. La Belle Farm, Inc.,
  239 F.R.D. 363 (S.D.N.Y. 2007) ............................................................................................11

Lynch v. U.S. Auto. Assoc.,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007).....................................................................................10

Morales v. Plantworks, Inc.,
  No. 05 Civ. 2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ...............................................11

Raniere v. Citigroup Inc.,
  No. 11 Civ. 2448, 2011 WL 5881926 (S.D.N.Y. Nov. 22, 2011) ..........................................11

Romero v. H.B. Auto. Grp, Inc.,
  No. 11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012).........................10, 11, 12

**STATUTES**

Section 216(b) of the Fair Labor Standards Act ("FLSA") ......................................................1, 13

**OTHER AUTHORITIES**

https://www1.nyc.gov/nycbusiness/description/food-protection-certificate ................................10

**PRELIMINARY STATEMENT**

Defendants, Planet Wings Enterprises, Inc., Planet Wings Inc., and Planet Wings Management, Inc., Franco Fidanza, Paula Fidanza, Demco of Wappingers Falls, LLC, Demco of Ossining, LLC ("Ossining"), Demco of Riverdale LLC ("Riverdale"), and Demetrio Petrizzo ("Petrizzo"), through their undersigned attorneys, submit this memorandum of law in opposition to the motion for conditional certification pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") of Plaintiffs David Benitez ("Benitez") and Gerson Venites ("Venites").

Plaintiffs' instant motion seeks to conditionally certify Ossining and Riverdale's non-exempt hourly cooks. While Plaintiffs' burden is minimal in seeking conditional certification, it is not non-existent. Plaintiffs' motion should be denied as legally deficient, as Plaintiffs have failed to show any factual nexus between Plaintiffs and the non-exempt hourly cooks they are seeking to conditionally certify.

**STATEMENT OF FACTS**

The relevant facts from the accompanying Declaration of Demetrio Petrizzo executed April 16, 2015 ("Petrizzo Decl."), the Declaration of Joel Cruz ("Cruz") executed April 16, 2015 ("Cruz Decl."), and the Declaration of Darlene Espada ("Espada") executed April 16, 2015 ("Espada Decl."); the Declaration of Amanda Rodrigues ("Rodrigues") executed April 13, 2015 ("Rodrigues Decl."), the Declaration of Nyrese Smith ("Smith") executed April 13, 2015 ("Smith Decl."), are summarized below. (All referenced exhibits are annexed to the Petrizzo Decl. are referenced herein as "Ex. __.")

Petrizzo is a defendant in this action and the owner of Riverdale and Ossining. (Petrizzo Decl. ¶2.) Cruz, who was hired by Venites, has been employed as a cook at Riverdale for approximately the last three years. (Cruz Decl. ¶1, 2.) Espada is employed as a Shift Lead at Riverdale. (Espada Decl. ¶1.) She was originally hired to work at Riverdale, in or about

September 2011, as a counterperson/cashier, and has since been promoted to Shift Lead. (Espada Decl. ¶2.)  Rodrigues is employed as a Shift Lead, and has been employed at Ossining for approximately five years.  (Rodrigues Decl. ¶¶1, 2.)  Smith is employed as a Cashier at Ossining, and has worked there since approximately August 2013.  (Smith Decl. ¶¶1, 2.)

Venites was employed as the only Store Manager at Ossining.  (Petrizzo Decl. ¶3, Ex. A.)  In connection with the opening of Riverdale, Venites trained Benitez to be the Store Manager of Riverdale.  (Petrizzo Decl. ¶4.)  Benitez was the Store Manager at Riverdale throughout his employment at Riverdale.  (Petrizzo Decl. ¶5.)  Other than the Store Managers at Ossining and Riverdale, the only other kitchen staff includes non-exempt hourly cooks.  (Petrizzo Decl. ¶6.)

Wages and Benefits

As Store Managers, Plaintiffs were paid salaries.  (Petrizzo Decl. ¶7.)  Venites' salary as a Store Manager was $925 per week, and Benitez's salary as a Store Manager was $810 per week.  (Petrizzo Decl. ¶7.)

The non-exempt cooks are paid hourly wage rates, which were set by Plaintiffs, plus overtime where applicable.  (Petrizzo Decl. ¶8; Cruz Decl. ¶¶7, 15.)  The non-exempt cooks did not set hourly rates for each other.  (Cruz Decl. ¶15.)  Increases to the non-exempt hourly cooks' hourly wages were determined by Plaintiffs at their respective stores.  (Petrizzo Decl. ¶9; Cruz Decl. ¶6.)

Plaintiffs were eligible for and received bonuses which were incentive rewards for managers only.  (Petrizzo Decl. ¶10, Exs. B, C.)  The non-exempt hourly cooks were not eligible for such bonuses.  (Petrizzo Decl. ¶11.)

As Store Managers, Plaintiffs also received paid holidays and vacation time.  (Petrizzo Decl. ¶12.)  The non-exempt hourly cooks were not eligible for and did not receive paid holidays or vacation time.  (Petrizzo Decl. ¶13.)  Plaintiffs were also paid their full salary if the stores

2

were closed or closed early. (Petrizzo Decl. ¶14.) For example, Venites was paid his full salary for the five days Ossining was closed due to Hurricane Sandy, and when the store was closed due to a power outage. (Petrizzo Decl. ¶14.) Non-exempt hourly cooks were not paid if they did not work due to the store being closed. (Petrizzo Decl. ¶14.)

Primary Duties

At all times relevant to this action, Venites was the only Store Manager at Ossining, and the highest level salaried individual working at Ossining on a day-to-day basis. (Petrizzo Decl. ¶15.) When Benitez was employed at Riverdale, he was the only Store Manager at Riverdale, and the highest level salaried individual working at Riverdale on a day-to-day basis. (Petrizzo Decl. ¶16.) As the Store Managers, Plaintiffs managed the day-to-day operations of their respective stores as well as the non-exempt hourly store employees whom they supervised. (Petrizzo Decl. ¶17; Rodrigues Decl. ¶¶5, 6, 11; Smith Decl. ¶¶3, 5, 6; Cruz Decl. ¶5.)

The primary duties of the cooks at Riverdale and Ossining included cooking all orders as them came in throughout the day, preparing all food that is needed throughout the week, cutting chicken and vegetables, washing dishes, filtering and changing the oil for the fryers daily, keeping the kitchen organized, stocked and rush ready, putting away the food deliveries twice a week, keeping the kitchen clean, cleaning and wiping down the equipment daily, sweeping and mopping the kitchen daily, and other daily, weekly, or monthly cleaning projects (such as deep cleaning and degreasing the back wall of the kitchen) as determined and instructed by the Store Manager. (Petrizzo Decl. ¶18; Cruz Decl. ¶10; Espada Decl. ¶12.)

As Managers, Plaintiffs had a number of duties and responsibilities specific to being managers, of their respective restaurants, which duties and responsibilities were specifically not given to non-exempt hourly employees including but not limited to ensuring that the non-exempt hourly employees (including the non-exempt hourly cooks, drivers, front counter staff and shift

leads) were present and performing their duties and making sure they were following all department of health rules and regulations. (Petrizzo Decl. ¶19; Smith Decl. ¶¶5, 6; Cruz Decl. ¶¶11, 18; Espada Decl. ¶¶7, 8, 11, 12.) Plaintiffs would also address customer complaints regarding orders by fixing wrong orders, misdeliveries, or if the customer was not completely satisfied. (Petrizzo Decl. ¶¶19, 42; Rodrigues Decl. ¶10; Cruz Decl. ¶19; Espada Decl. ¶¶9, 10.) Non-exempt hourly cooks did not handle customer complaints. (Petrizzo Decl. ¶42; Cruz Decl. ¶19; Rodrigues Decl. ¶14.)

Plaintiffs were responsible for setting and controlling cooks' work schedules at their respective stores. (Petrizzo Decl. ¶20; Cruz Decl. ¶¶6, 8, 15, 16; Espada Decl. ¶16.) The non-exempt cooks did not set or control their own or other cooks' work schedules. (Petrizzo Decl. ¶20; Cruz Decl. ¶¶15, 16.)

Plaintiffs, as the Store Managers, also supervised the drivers at their respective stores, while the non-exempt cooks did not supervise drivers. (Petrizzo Decl. ¶21; Cruz Decl. ¶20; Rodrigues Decl. ¶10; Espada Decl. ¶7.) As an example, attached hereto at **Exhibit D** is a true copy of a schedule that Benitez posted for the drivers at Riverdale with Benitez's hand-written note instructing the drivers to follow the schedule. (Petrizzo Decl. ¶21, Ex. D.) Plaintiffs also instructed the drivers to take out garbage, whereas, the non-exempt hourly cooks did not instruct drivers. (Petrizzo Decl. ¶21; Espada Decl. ¶¶7, 8.)

Employees would notify Venites or Benitez, at their respective stores, if they were going to be late or absent or needed to leave early, so that Plaintiffs could arrange adequate coverage at their respective stores. (Petrizzo Decl. ¶22; Cruz Decl. ¶16.) For example, if a driver did not show up on time, Benitez would call the driver or get coverage for him. (Cruz Decl. ¶20.) The non-exempt hourly cooks did not arrange coverage at their respective coverage. (Petrizzo Decl. ¶22.)

4

As the Store Manager, Benitez also told employees when to move back and forth between the "Manager's Register" and an "Ordering Register" at the front of the store. (Espada Decl. ¶17.) Benitez also regularly closed out the front registers, whereas the cooks did not close out the front registers. (Petrizzo Decl. ¶22; Cruz Decl. ¶18.)

As Store Managers, Plaintiffs reviewed new hire applications and interviewed new hire applicants at their respective stores. (Petrizzo Decl. ¶23; Espada Decl. ¶13.) Attached hereto at **Exhibit E** are true copies of employment applications for Riverdale that were reviewed by Benitez as reflected by his hand-written notes on the applications. (Petrizzo Decl. ¶24, Ex. E.) The non-exempt hourly cooks did not review new hire applications or interview new hire applicants. (Petrizzo Decl. ¶23.)

All new cooks were hired by Plaintiffs. (Petrizzo Decl. ¶¶25, 26, 27; Cruz Decl. ¶¶3, 4; Espada Decl. ¶14.) For example, attached hereto at **Exhibit F** is a true copy of Benitez's hand-written list of cooks who he hired at Riverdale along with their hire dates. (Petrizzo Decl. ¶27, Ex. F.) Cruz, who had been hired by Benitez, had worked at Riverdale for months before he ever knew Petrizzo was the owner of Riverdale, and had never met or spoken with Petrizzo during that time. (Cruz Decl. ¶9.) Benitez also hired drivers and individuals to work the front counter at Riverdale. (Petrizzo Decl. ¶¶25, 26; Espada Decl. ¶19.) The non-exempt hourly cooks did not hire new employees. (Petrizzo Decl. ¶28.)

As Store Managers, Plaintiffs supervised and disciplined employees. (Petrizzo Decl. ¶29; Rodrigues Decl. ¶¶9, 12, 13; Cruz Decl. ¶¶5, 11, 12; Smith Decl. ¶5; Espada Decl. ¶20.) Attached hereto at **Exhibit G** is a true copy of a Written Warning issued to and signed by Benitez regarding the way he was, as a manager, "running his crew" and "his current shift leads." (Petrizzo Decl. ¶29, Ex. G.) Attached hereto at **Exhibit H** is a true copy of a Written Warning Form to all counter and driver staff regarding scheduling and signed by Venites as

5

Manager.  (Petrizzo Decl. ¶29, Ex. H.)  The non-exempt hourly cooks did not supervise or discipline employees.  (Petrizzo Decl. ¶2; Cruz Decl. ¶¶11, 12.)

Plaintiffs would run employee store meetings as well as provide the topics to be presented and/or discussed at the meetings.  (Petrizzo Decl. ¶30.)  The non-exempt hourly cooks did not run employee store meetings.  (Petrizzo Decl. ¶30.)

As Store Managers, Plaintiffs hired and paid temporary employees.  (Petrizzo Decl. ¶31; Espada Decl. ¶18; Cruz Decl. ¶17.)  For example, Super Bowl Sunday is an extremely busy day for Riverdale and Ossining.  (Petrizzo Decl. ¶31.)  As such, Riverdale and Ossining brought in temporary help for that day to those locations.  (Petrizzo Decl. ¶31; Espada Decl. ¶18.)  Plaintiffs were responsible for recruiting and hiring people to work in their respective restaurants that day and were provided with blank company checks to pay the individuals for their work that day.  (Petrizzo Decl. ¶31; Espada Decl. ¶18; Cruz Decl. ¶17.)  The non-exempt hourly cooks did not hire and did not pay temporary employees and were not provided with checks to pay temporary employees.  (Petrizzo Decl. ¶31; Cruz Decl. ¶17.)

Attached hereto together at **Exhibit I** are true copies of checks that Venites filled out for payments Venites authorized and issued to individuals for their work at Ossining, including work for Super Bowl Sunday, along with copies of Venites' hand-written notes regarding payments and receipts of payments made by Venites.  (Petrizzo Decl. ¶32, Ex. I.)  Attached hereto together at **Exhibit J** are true copies of checks that Benitez filled out for payments that Benitez authorized and issued to individuals for their work at Riverdale, including work for Super Bowl Sunday, along with copies of Benitez's hand-written notes regarding payments and receipts of payments made by Benitez.  (Petrizzo Decl. ¶32, Ex. J.)  Non-exempt hourly cooks did not fill out checks to pay temporary employees.  (Petrizzo Decl. ¶32; Cruz Decl. ¶17.)

6

Also, as an example, one of the individuals that Benitez brought in to work Super Bowl Sunday, at Riverdale, was his brother Francisco Benitez ("Francisco"), who was a former employee who had not left on good terms and who the owner would not have hired back. (Petrizzo Decl. ¶33; Espada Decl. ¶18; Cruz Decl. ¶17.)  However, Benitez brought Francisco in and even set his pay amount at double what was normally paid to the extra help on Super Bowl Sunday.  (Petrizzo Decl. ¶33; Espada Decl. ¶18; Cruz Decl. ¶17.)  Attached hereto at **Exhibit J** is a true copy of the signed receipt for a check issued by Benitez to his brother Francisco for working at Riverdale on Super Bowl Sunday 2014.  (Petrizzo Decl. ¶33, Ex. J.)

As Store Managers, Plaintiffs trained the employees at their respective stores and provided new employee orientations.  (Petrizzo Decl. ¶34; Rodrigues Decl. ¶7; Espada Decl. ¶¶3, 11, 15; Cruz Decl. ¶11.)  Benitez oversaw the staffing needs and trained employees at Riverdale.  (Petrizzo Decl. ¶34; Rodrigues Decl. ¶7; Espada Decl. ¶¶3, 11, 15; Cruz Decl. ¶11.)  As an example, attached hereto at **Exhibit K** is a true copy of Benitez's hand-written instructions to a new cook at Riverdale in connection with the new cook's training and scheduling.  (Petrizzo Decl. ¶34, Ex. K.)  The non-exempt hourly cooks did not provide new employee orientations. (Petrizzo Decl. ¶34.)

Plaintiffs also issued and enforced employee policies.  (Petrizzo Decl. ¶35; Espada Decl. ¶20.)  Attached hereto at **Exhibit L** is a true copy of a Written Warning issued to an employee, regarding the employee's tardiness, which was signed by Benitez as the Manager.  (Petrizzo Decl. ¶35, Ex. L.)  Attached hereto at **Exhibit M** is a true copy of a Written Warning issued to an employee, regarding the employee closing Riverdale early without permission, which was signed by Benitez as the Manager.  (Petrizzo Decl. ¶35, Ex. M.)  The non-exempt hourly cooks did not issue employee policies or written warnings.  (Petrizzo Decl. ¶35.)

Plaintiffs also managed the employee schedules and authorized employee absences, late arrivals, and early departures. (Petrizzo Decl. ¶¶36, 37; Espada Decl. ¶20; Cruz Decl. ¶16.) As an example, attached hereto as **Exhibit N** is a true copy of a Shift Log for individuals working the counter showing Venites' approval of the shift assignment. (Petrizzo Decl. ¶36, Ex. N.) The non-exempt hourly cooks did not manage the employee schedules or authorize employee absences, late arrivals, or early departures. (Petrizzo Decl. ¶¶36, 37; Cruz Decl. ¶16.) No one supervised Plaintiffs. (Cruz Decl. ¶16.) Benitez would come and go and take breaks as he pleased and would make statements to the cooks like "I don't get paid by the hour, I get a salary." (Cruz Decl. ¶16.)

Plaintiffs also submitted new hire information (e.g., names, contact information, deductions) for payroll purposes and submitted the weekly hours for all employees at their respective stores, and distributed the weekly paychecks to the employees at their respective stores. (Petrizzo Decl. ¶38; Cruz Decl. ¶15.) The non-exempt hourly cooks did not submit new hire information for payroll purposes and did not submit the weekly hours for the employees at their respective stores. (Petrizzo Decl. ¶38.)

Plaintiffs dealt directly with the stores' linen company regarding rags and aprons, whereas non-exempt hourly cooks did not deal with the linen company. (Petrizzo Decl. ¶39.)

Plaintiffs managed the weekly food orders twice a week and the bi-weekly inventories for their respective stores and reviewed orders and checked in food when it arrived and would contact the distributors directly if a complete order was not received. (Petrizzo Decl. ¶40; Espada Decl. ¶4; Cruz Decl. ¶13.) As examples, **Exhibit O** is a true copy of one of Venites' food orders, and **Exhibit P** is a true copy of one of Benitez's food orders. (Petrizzo Decl. ¶40, Exs. O, P.) The non-exempt hourly cooks did not manage the weekly food order or bi-weekly inventories and they did not contact distributors regarding orders. (Petrizzo Decl. ¶40; Espada

8

Decl. ¶4; Cruz Decl. ¶13.)  Additionally, Riverdale was running short on a particular supply, in between orders, permission had to be obtained by Benitez as the Store Manager to purchase the supply.  (Espada Decl. ¶5.)  Benitez, as the Store Manager, would also instruct employees to obtain supplies which were running low.  (Espada Decl. ¶6.)

Plaintiffs were also responsible for paying the C.O.D. deliveries.  (Petrizzo Decl. ¶41; Cruz Decl. ¶14.)  For example, when a soda delivery would come in, they would obtain the money from the store safe (for which they had codes) and pay for the delivery, whereas non-exempt hourly cooks were not responsible for paying the C.O.D. deliveries.  (Petrizzo Decl. ¶41; Cruz Decl. ¶14.)

The U.S. DOL Audit

The United States Department of Labor ("DOL") conducted an investigation of Riverdale for the period of June 7, 2010, to June 5, 2012, which included non-exempt hourly cooks.  (Petrizzo Decl. ¶43.)  **Exhibit Q** is a true copy of the redacted DOL Back Wage Compliance and Payment Agreement and Summary of Unpaid Wages.  (Petrizzo Decl. ¶43, Ex. Q.)  It is the owner's understanding that none of the hourly cooks were found to be owed unpaid overtime in the DOL audit, and that the DOL interviewed Benitez and determined that Benitez was a manager and excluded him from its audit.  (Petrizzo Decl. ¶43.)

Manager Certifications

Benitez was in charge of and responsible for overseeing the inspections of Riverdale.  (Petrizzo Decl. ¶44.)  True copies of an Inspection Report and Notice of Violation both dated April 25, 2013, from the New York City Department of Health & Mental Hygiene ("NYC DOH") are annexed at **Exhibit R**.  (Petrizzo Decl. ¶44, Ex. R.)  Benitez signed the health inspection report and violation acknowledging his receipt of same and indicating that he is

9

Riverdale's Food Protection Certificate ("FPC") holder.  (Petrizzo Decl. ¶44, Ex. R.)  The non-exempt hourly cooks are not FPC holders.  (Petrizzo Decl. ¶45.)

The NYC DOH requires the FPC for supervisors in any food establishment.  (Petrizzo Decl. ¶46.)  (**Exhibit S** is a true copy of a print out of the information posted on The Official Website of the City of New York (https://www1.nyc.gov/nycbusiness/description/food-protection-certificate (last visited 11/05/14).)  (Petrizzo Decl. ¶46, Ex. S.)  The FPC requires applicants to take a 15-hour course and pass an examination, and FPC holders are required by the NYC DOH to be on premises and supervise all food preparation activities.  (Petrizzo Decl. ¶46, Ex. S.)

Venites was in charge of and responsible for overseeing inspections of Ossining.  (Petrizzo Decl. ¶47.)  Attached together at **Exhibit T** are copies of the Westchester County Department of Health Food Service Establishment Inspection and Hazardous Analysis Critical Control Point Monitoring Procedure Reports signed by Venites as the "Person in Charge".  (Petrizzo Decl. ¶47, Ex. T.)

Plaintiffs were, at all times relevant, classified by their employer as exempt Store Managers, and viewed as such by the non-exempt hourly workers who Plaintiffs supervised.

### ARGUMENT

### I.   CONDITIONAL CERTIFICATION SHOULD BE DENIED

A.   <u>Absence of a factual nexus between Plaintiffs and purported collective bars certification</u>

In this initial stage of conditional certification, "the Court makes a preliminary determination about whether the named plaintiffs and potential op-in plaintiffs are sufficiently 'similarly situated' to authorize the sending of notice and allow the case 'to proceed as a collective action through discovery.'"  <u>Romero v. H.B. Auto. Grp, Inc.</u>, No. 11 Civ. 386 (CM), 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012) (citing <u>Lynch v. U.S. Auto. Assoc.</u>, 491 F.

10

Supp. 2d 357, 368 (S.D.N.Y. 2007)). "If the court finds that the named plaintiffs and potential opt-ins are indeed 'similarly situated' with respect to their job duties/requirements, compensation, and employer policies, the court 'conditionally certifies' the collective action.'" Id. (citing Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007)).

While Plaintiffs' burden of proof is low in seeking conditional certification, "it is not non-existent – 'certification is not automatic.'"  Romero, 2012 WL 1514810, at *10 (citing Raniere v. Citigroup Inc., No. 11 Civ. 2448, 2011 WL 5881926, at *23 (S.D.N.Y. Nov. 22, 2011)).  Broad conclusory allegations are not enough to meet conditional certification requirements.  Morales v. Plantworks, Inc., No. 05 Civ. 2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (citing Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); Flores v. Osaka Health SPA, Inc., No. 05 Civ. 962, 2006 WL 695675, at *2 (S.D.N.Y. Mar. 16, 2006).

"The collective action procedure was designed to promote the 'efficient adjudication of similar claims,' so that 'similarly situated' employees may pool resources to prosecute their claims."  Romero, 2012 WL 1514810, at *5 (citing Lynch, 491 F. Supp. 2d at 367 (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482 (1989))).  Here, however, Plaintiffs seek to conditionally certify a collective action consisting of employees who were classified as exempt and employees who were classified as non-exempt with different positions and different job duties.  Romero, 2012 WL 1514810, at *11.  Accordingly, the collective action cannot be conditionally certified, as it is too broad.  Id.

Here, Plaintiffs, were at all times relevant, classified as exempt Store Managers, who were salaried employees. (Petrizzo Decl. ¶¶3, 5, 7.)  Whereas, the individuals they seek to conditionally certify are non-exempt cooks who were paid hourly and overtime. (Petrizzo Decl. ¶8; Cruz Decl. ¶¶7, 15.)  "Where a collective action contains a mix of employees, some of whom are classified exempt from the FLSA's requirements, and some of whom were classified as non-

11

00915538.DOC

exempt, there is no factual nexus between the collective action members' situations, and conditional certification is not appropriate." Romero, 2012 WL 1514810, at *12 (citing Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 119-20 (D.D.C. 2004); Diaz v. Elecs. Boutique of Am., Inc., No. 04 Civ. 0840E, 2005 WL 2654270, at *3-4 (W.D.N.Y. Oct. 17, 2005)).  Accordingly, there is no factual nexus between Plaintiffs, who were classified as exempt Store Managers, and the non-exempt hourly cooks who Plaintiffs supervised.

"Including these potentially exempt employees into the collective action would … 'inject into the case an additional legal question bearing on liability.'"  Romero, 2012 WL 1514810, at *13 (citing Hunter, 346 F. Supp. 2d at 119).  As set forth above in detail, the evidence supports the fact that Plaintiffs were properly classified as exempt Store Managers.  With regard to Plaintiffs, the parties first need to litigate whether Plaintiffs were misclassified as exempt Store Managers and establish whether there is liability for overtime wages; "whereas the non-exempt employees need only determine the *amount* of relief—if any—to which they are entitled."  Romero, 2012 WL 1514810, at *13.  Consequently, as the non-exempt hourly cooks are not similarly situated to Plaintiffs, the collective action cannot be conditionally certified.  See Id.

For the foregoing reasons, Plaintiffs' instant motion should be denied in all respects and the Court should deny conditional certification of Demco's cooks.

00915538.DOC

## **CONCLUSION**

As set forth above, Defendants respectfully request that the Court enter an Order denying Plaintiffs' motion for conditional certification pursuant to Section 216(b) of the FLSA.

Dated: New York, New York
April 17, 2015

          **TARTER KRINSKY & DROGIN LLP**
          *Attorneys for Defendants*

          By: /s Richard L. Steer
              Richard L. Steer
              Tara Toevs Carolan
              1350 Broadway, 11th Floor
              New York, New York 10018
              Phone: (212) 216-8000
              rsteer@tarterkrinsky.com
              tcarolan@tarterkrinsky.com